UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

STEPHANIE WHEELER                    CIVIL ACTION NO. 6:17-cv-00847

VERSUS                               JUDGE JAMES

DOLLAR TREE STORES, INC.             MAGISTRATE JUDGE HANNA

## REPORT AND RECOMMENDATION

Currently pending is the defendant's motion to dismiss the plaintiff's complaint and compel arbitration. (Rec. Doc. 6). The motion is opposed. (Rec. Doc. 13). The motion was referred to the undersigned Magistrate Judge for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of this Court.

Upon initial review of the motion, this Court deferred ruling, ordered the parties to conduct limited discovery, and ordered the parties to submit supplemental briefs. (Rec. Doc. 16). The parties complied with this Court's order and submitted additional briefing. (Rec. Docs. 19, 20). Following review of the parties' supplemental briefs, this Court held an evidentiary hearing on October 30, 2017. The parties submitted evidence along with their briefs, and they also presented testimonial evidence at the hearing. Because the evidence goes beyond the scope of the allegations set forth in the plaintiff's original and first supplemental and amended petitions for damages, this Court converted the motion to dismiss and to compel

arbitration into a motion for summary judgment and afforded the parties an opportunity to submit any supplemental briefs or exhibits they believed necessary to support or oppose the motion for summary judgment. (Rec. Doc. 26). This Court also ordered the plaintiff to deliver to chambers the originals of the two declarations that the plaintiff submitted in support of her opposition brief. (Rec. Doc. 26). The defendants filed a supplemental brief (Rec. Doc 28) but the plaintiff did not submit additional exhibits or a supplemental brief within the time allotted. Furthermore, the plaintiff did not comply with this Court's order requiring the originals of her declarations to be delivered to chambers. Instead, claiming that she misplaced the original of "a document entitled Declaration of Stephanie Wheeler" that she "received" on or about August 3, 2017, the plaintiff submitted a new declaration, in which she stated that she went to her lawyer's office on November 7, 2017, and again signed the two previous declarations, both of which remain dated August 3, 2017. The new declaration is dated November 7, 2017. The new declaration and the two admittedly post-dated declarations were filed in the record. (Rec. Doc. 29).

Considering the evidence, the law, and the arguments of the parties, and for the reasons fully explained below, it is recommended that the defendant's motion for summary judgment, seeking to enforce an arbitration agreement between the parties, be granted.

This is an employment discrimination lawsuit.  In her original petition for damages, the plaintiff alleged that she is an African-American woman who was employed by the defendant, Dollar Tree Stores, Inc., and was told by her supervisor that she would not be promoted to a store manager's position because there were already too many African-American managers working for the company.  She also alleged that she was required by her employer to work "off the clock."  She claimed that she was suspended from her employment on an unspecified date and then terminated on August 15, 2016, allegedly in retaliation for having complained about being mistreated because of her race.  After filing a discrimination charge with the EEOC and receiving a right to sue letter, she filed this lawsuit, asserting claims under Louisiana's Employment Discrimination Law, La. R.S. 23:301, *et seq*.  In her first amending and supplemental petition for damages, the plaintiff asserted a claim for the deliberate underpayment of wages in violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*.

In her complaint, the plaintiff alleged that she began working for the defendant in June 2015 as a cashier.  (Rec. Doc. 1-1 at 6).  She also alleged that, in May 2016, she applied for a store manager's position and passed the examination necessary for promotion to that position.  (Rec. Doc. 1-1 at 7).  After being denied promotion to a

management position and after being required to work "off the clock," the plaintiff allegedly told her supervisors that she believed she was being treated unfairly because of her race. (Rec. Doc. 1-1 at 7). She alleged that the defendant first suspended her and then, on August 15, 2016, terminated her employment. (Rec. Doc. 1-1 at 7).

The defendant responded to the plaintiff's complaint with the instant motion, contending that, on December 8, 2015, the plaintiff signed an enforceable arbitration agreement, which requires that the claims asserted in the plaintiff's complaint must be resolved by means of arbitration rather than through litigation of this lawsuit. The defendant seeks to compel arbitration and have this lawsuit dismissed. In response, the plaintiff denied that she ever signed an arbitration agreement.

LAW AND ANALYSIS

A.    THE STANDARD FOR RESOLVING A MOTION FOR SUMMARY JUDGMENT

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. A fact is material if proof of its existence or nonexistence might affect the outcome of the lawsuit under the

applicable governing law.[1] A genuine issue of material fact exists if a reasonable jury

could render a verdict for the nonmoving party.[2]

The party seeking summary judgment has the initial responsibility of informing

the court of the basis for its motion and identifying those parts of the record that

demonstrate the absence of genuine issues of material fact.[3] If the moving party

carries its initial burden, the burden shifts to the nonmoving party to demonstrate the

existence of a genuine issue of a material fact.[4] All facts and inferences are construed

in the light most favorable to the nonmoving party.[5]

If the dispositive issue is one on which the nonmoving party will bear the

burden of proof at trial, the moving party may satisfy its burden by pointing out that

there is insufficient proof concerning an essential element of the nonmoving party's

---

[1]      *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009); *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).

[2]      *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252); *Hamilton v. Segue Software, Inc.*, 232 F.3d at 477.

[3]      *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

[4]      *Washburn v. Harvey*, 504 F.3d at 508.

[5]      *Brumfield v. Hollins*, 551 F.3d at 326 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)).

claim.[6]  The motion should be granted if the nonmoving party cannot produce evidence to support an essential element of its claim.[7]

When both parties have submitted evidence of contradictory facts, a court is bound to draw all reasonable inferences in favor of the nonmoving party.[8]  The court cannot make credibility determinations or weigh the evidence, and the nonmovant cannot meet his burden with unsubstantiated assertions, conclusory allegations, or a scintilla of evidence.[9]  "When all of the summary judgment evidence presented by both parties could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial and summary judgment is proper."[10]

Interpretations of statutory provisions that are dispositive and raise only questions of law, there being no contest as to the operative facts, are particularly appropriate for summary judgment.[11]

---

[6]     *Norwegian Bulk Transport A/S v. International Marine Terminals Partnership*, 520 F.3d 409, 412 (5th Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. at 325).

[7]     *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

[8]     *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005).

[9]     *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d at 540.

[10]    *Greene v. Syngenta Crop Protection, Inc.*, 207 F.Supp.2d 537, 542 (M.D. La. 2002) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

[11]    *Dobbs v. Costle*, 559 F.2d 946, 947 (5th Cir. 1977).  See, also, *Kemp v. G.D. Searle & Co.*, 103 F.3d 405, 407 (5th Cir. 1997) ("questions of statutory interpretation are questions of law.").

**B. THE STANDARD FOR COMPELLING THE ENFORCEMENT OF AN ARBITRATION AGREEMENT**

Arbitration is favored under Louisiana law[12] and also under federal law.[13] In fact, there is a strong presumption in favor of arbitration, and the burden is on the party challenging the arbitration agreement to show that it is invalid.[14] The agreement at issue in this case expressly states that it is governed by the Federal Arbitration Act ("FAA"). Therefore, this Court finds that the FAA is applicable to the agreement at issue. The FAA requires the enforcement of arbitration agreements through the issuance of an order directing the parties to engage in arbitration and staying the litigation of disputes that are referable to arbitration.[15]

The Fifth Circuit developed a two-prong inquiry for deciding whether parties should be compelled to arbitrate their disputes.[16] The first prong requires a court to

---

[12] *Aguillard v. Auction Management Corp.*, 908 So.2d 1, 7 (La. 06/29/2005).

[13] *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006); *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 56 (1995); *Gregson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 526 (5th Cir. 2000) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).

[14] *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004).

[15] 9 U.S.C. §§ 3–4; *Brown v. Pac. Life Ins. Co.*, 462 F.3d 384, 389 n. 1 (5th Cir. 2006) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. at 22).

[16] *OPE International LP v. Chet Morrison Contractors, Inc.*, 258 F.3d 443, 445-46 (5th Cir. 2001).

determine whether the parties agreed to arbitrate.[17]  Two factors are considered in

making this determination:  (1) whether a valid agreement to arbitrate exists between

the parties; and (2) whether the dispute in question is within the scope of the

arbitration agreement.[18]  In determining whether there is a valid arbitration agreement

between the parties, courts apply state contract law.[19]  In determining whether a

question falls within the scope of an arbitration agreement, courts apply the federal

policy favoring arbitration.[20]  Once a court finds that the parties agreed to arbitrate,

it must move to the second prong of the analysis and consider whether any federal

statute or policy renders the claim nonarbitrable.[21]

The Federal Arbitration Act ("FAA") provides for a stay pending arbitration.[22]

A court, however, may dismiss an action with prejudice, rather than stay it, when all

---

[17]     *OPE International LP v. Chet Morrison Contractors, Inc*., 258 F.3d at 445.

[18]     *OPE International LP v. Chet Morrison Contractors, Inc*., 258 F.3d at 445.

[19]     *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 431 (5th Cir. 2004); *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

[20]     *Sherer v. Green Tree Servicing LLC*, 548 F.3d 379, 381 (5th Cir. 2008); *Fleetwood Enterprises, Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002).

[21]     *Washington Mut. Finance Group, LLC v. Bailey*, 364 F.3d 260, 263 (5th Cir. 2004) (citing *Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 471 (5th Cir. 2002)).

[22]     9 U.S.C. § 3.

claims are subject to arbitration.[23]  This is so because "[a]ny postarbitration remedies sought by the parties will not entail renewed consideration and adjudication of the merits by the controversy but would be circumscribed to a judicial review of the arbitrator's award in the limited manner prescribed by law."[24]

## C.    AN ARBITRATION AGREEMENT EXISTS

The defendant contends that the plaintiff electronically signed a "Mutual Agreement to Arbitrate Claims" on December 8, 2015.  A copy of the agreement was submitted along with the declaration of the defendant's Manager of Recruiting Operations, Vincent Votta.  (Rec. Doc. 6-2).

The defendant submitted the declaration of former Dollar Tree employee Angela McKee, who was the manager of the second Dollar Tree store where the plaintiff worked.  (Rec. Doc. 19-1).  Ms. McKee stated that she sat with Ms. Wheeler on December 8, 2015 when Ms. Wheeler filled out various documentation on the computer and signed electronically the forms required for her to be hired as a cashier at the Dollar Tree store on the Evangeline Thruway in Lafayette, Louisiana. According to Ms. McKee, the forms included an arbitration agreement.    Also

---

[23]    *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) ("The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration.") (citations omitted).

[24]    *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d at 1164.

according to Ms. McKee, only the plaintiff could have affixed her electronic signature to the arbitration agreement.

Along with her original opposition brief, the plaintiff submitted her own declaration, in which she stated that she worked for the defendant at its Moss Hwy store from June 2015 until she resigned in November 2015, that she began working for the defendant again in January 2016, and that she did not consent to arbitration either when she started working for the defendant in June 2015 or when she went back to work for the defendant in January 2016.  (Rec. Doc. 13-1).  The plaintiff submitted a second declaration along with her supplemental brief, in which she stated that she worked for Dollar Tree from June 2015 until August 2016.  (Rec. Doc. 20-1 at 1).  Those dates comport with the allegations of her original complaint.  She attached a document to her second declaration that purports to show that was paid by the defendant in every pay period from June 20, 2015 through August 19, 2016. (Rec. Doc. 20-1 at 5-6).  Based on that document, she argued that she was not a new hire in December 2015 and consequently would not have been asked to fill out any new hire paperwork at that time, including an agreement to arbitrate.  However, this conflicts with her first declaration, in which she said:

- "After being employed at Dollar Tree's Moss Hwy store location for five (5) months, I voluntarily submitted my resignation in November, 2015." (Rec. Doc. 13-1 at 2).

- "I began working for Dollar Tree again in January, 2016." (Rec. Doc. 13-1 at 2).

- "When I began working in January, 2016, I was classified as a rehire by my Dollar Tree supervisor." (Rec. Doc. 13-1 at 2).

The first declaration submitted by the plaintiff was dated August 3, 2017 and filed with the court on that same date. Later, on October 10, 2017, the plaintiff submitted a second declaration. (Rec. Doc. 20-1). However, that declaration was also dated August 3, 2017, and the signature on it is identical to that on the first declaration – not similar but **identical** – calling into question the authenticity of these documents. Further, that declaration describes actions taken on **October 9, 2017**, i.e. over two months **after** the date of her signature made under penalty of perjury.

Having been presented with documents allegedly stating facts that could not be reconciled, this Court held an evidentiary hearing on October 30, 2017. The plaintiff testified that she went to work for Dollar Tree in June 2015 at Store No. 2161, its Moss Street location in Lafayette, Louisiana. She claimed that she did not have to sign any documents other than a tax withholding form when she began her employment. She stated that she resigned her employment a few months later, after Thanksgiving in November 2015. She testified that she thereafter received a phone call from Mr. Preston, Dollar Tree's district manager, asking her to go to work at Store 5090 on the Evangeline Thruway in Lafayette, Louisiana. She stated that she

went to work at that store after Christmas of 2015. She also testified that she was not treated as a new hire or as a rehire or required to sign any documents when she went to work in the Evangeline Thruway store but was allowed to simply go to work because she "never was taken out of the system" (Rec. Doc. 27 at 8) and "never was removed out of the system." (Rec. Doc. 27 at 27). This is inconsistent with her declaration, which states that she was classified as a rehire when she went to work for Dollar Tree the second time. (Rec. Doc. 13-1 at 2). The plaintiff explained that, to her, a rehire was a reinstatement.

The plaintiff testified at the hearing that she "never had to sign anything electronically." (Rec. Doc. 27 at 30). More specifically, she stated that, although she was able to clock in and receive paychecks while working at the Evangeline Thruway store, she was never required to digitally sign an arbitration agreement. When presented with a copy of the arbitration agreeing indicating that she had digitally signed it on December 8, 2015, the plaintiff had no explanation for how her signature was affixed thereon. She said: "I don't know how it came to be signed because I did not sign it." (Rec. Doc. 27 at 37).

Angela McKee, the former manager of the Evangeline Thruway Dollar Tree store also testified at the hearing. She is no longer employed by Dollar Tree and now lives in Tennessee. She testified that the plaintiff was hired to work in her store on

or around December 8, 2015 and that, even though the plaintiff had previously worked in another Dollar Tree store, she had "to do the whole rehire paperwork all over again." (Rec. Doc. 27 at 45). More specifically, she stated that she could not pull up the plaintiff's records in the system and therefore had "to go ahead and. . . do the new-hire paperwork all over again." (Rec. Doc. 27 at 46). She testified that she initiated the paperwork on the computer in her office while the plaintiff was sitting in a chair beside her. She further testified that the plaintiff completed the onboarding process on the computer, including digitally signing the arbitration agreement. Ms. McKee denied digitally signing the arbitration agreement for the plaintiff, and she stated that there was nobody else present at the computer when the plaintiff was completing the onboarding paperwork. Therefore, it was her testimony that only the plaintiff could have digitally signed the arbitration agreement.

Vincent Votta, Dollar Tree's manager of recruiting operations, also testified at the hearing. He explained that the Career Launch software that Dollar Tree was using when the plaintiff went to work for Dollar Tree both times required a new employee to sign an arbitration agreement as part of the onboarding experience. (Rec. Doc. 27 at 60). He stated that an employee cannot begin working for Dollar Tree without completing the onboarding through Career Launch and cannot receive a pay check until the entire onboarding experience has been completed, including the digital

signing of the arbitration agreement. Mr. Votta testified that it is a common occurrence for an employee who is transferred from one Dollar Tree store to another to go through the onboarding process anew at the new store. (Rec. Doc. 27 at 62). Mr. Votta explained the linear process by which a new Dollar Tree employee must create a password, review various documents, and press a "click to sign" button to affix her digital signature to various documents, including the arbitration agreement, and then reenter the previously created password. Mr. Votta also explained that Dollar Tree's records show that the plaintiff electronically signed the arbitration agreement on December 8, 2015 as well as an I-9 form and a W-4 form.

The plaintiff testified that she did go to work for Dollar Tree, both in June 2015 and again in December 2015 or January 2016, that she was able to clock in on the cash register in the Dollar Tree stores where she worked, and that she was paid by Dollar Tree. Although the plaintiff testified that she was not required to digitally sign any documents when she went back to work for Dollar Tree after resigning her position in November 2015, that statement is inconsistent with the evidence presented regarding Dollar Tree's hiring procedures, explained by Ms. McKee and Mr. Votta, inconsistent with the fact that the plaintiff was able to clock in on the cash registers at the Evangeline Thruway store, and inconsistent with the fact that the plaintiff received paychecks during her tenure at that store.

Succinctly, the defendant argued that a valid arbitration agreement exists, while the plaintiff argued that no such agreement exists. The plaintiff's first declaration stated that "I did not verbally give my consent or sign any documents giving my consent to have any disputes or grievances against Dollar Tree subject to binding arbitration." (Rec. Doc. 13-1 at 1). In her second declaration, she said: "I was not asked to or required, as a condition of employment, to submit all disputes or grievances against Dollar Tree to binding arbitration," and "I did not verbally give my consent or sign any documents giving my consent to have any disputes or grievances against Dollar Tree subject to binding arbitration." (Rec. Doc. 20-1 at 2). In her testimony at the hearing, she claimed that she did not digitally sign an arbitration agreement before starting work at the Evangeline Thruway store. This Court finds the plaintiff's statements to be completely lacking in credibility, and this finding is not based solely on her contention that she did not digitally sign an arbitration agreement.

In opposition to the defendant's motion, the plaintiff filed two declarations in the record, the first on August 3, 2017 and the second on October 10, 2017. The signatures on both declarations are identical, and both are dated August 3, 2017. It is unlikely that both were actually executed at the same time.

At the hearing, the plaintiff testified that her signature on one of the declarations was a forgery until she was made to understand that the document she was looking at was a declaration prepared by her counsel. She then admitted that it was her signature on the document.

During the hearing, the plaintiff was asked about documents from the Department of Children & Family Services, State of Louisiana ("DCFS"), that were attached to and filed along with her second declaration. The plaintiff denied seeking services from DCFS. This suggests that the plaintiff either did not read the declaration before she signed it, did not understand the declaration, or made false statements in the declaration.

The documents that the plaintiff filed in the record on October 10, 2017, along with her second declaration dated August 3, 2017, constitute a historical pay summary from the defendant showing (a) that the defendant paid the plaintiff for 34.86 hours during the pay period ending November 7, 2015; (b) that the defendant paid the plaintiff for 40.4 hours of work in the pay period ending November 21, 2015; (c) that the defendant paid the plaintiff for 17.8 hours of work in the pay period ending December 5, 2015; and (d) that the defendant paid the plaintiff for 16.25 hours in the pay period ending December 19, 2015.

The plaintiff claimed in her first August 3, 2017 declaration that she did not go back to work with the defendant until January 2016 but she then admitted at the hearing that she started working at the second store location in December 2015. There is no genuine dispute that the plaintiff resigned from her job at the Moss Street store on November 28, 2015 as her letter of resignation bearing that date was submitted by the defendant in its supplement to the motion. (Rec. Doc. 28-1, p. 18). But the plaintiff testified at the hearing that she did not go back to work for the defendant until after Christmas of 2015. When presented with the records documenting that she was paid for time worked during December 2015, the plaintiff denied that she worked those days. She suggested, instead, that she had worked more than forty hours in a week near Thanksgiving and that those hours were shifted to later pay periods so that the defendant could avoid its obligation to pay overtime. But that explanation is not credible.

Thanksgiving Day fell on November 26, 2015, which was within the two-week pay period which began on November 22 and ended on December 5, 2015, and before the plaintiff resigned her employment on November 28, 2015. The records submitted by the plaintiff show that the plaintiff worked 17.8 hours during that two-week pay period covering the time period from November 22 to December 5. This is consistent with the fact that there were only six "potential" work days in that pay period while

she was still employed. The record also shows she worked 16.25 hours during the two-week pay period ending December 19 and covering the time period from December 6 to December 19. This is consistent with the fact that there were only eleven potential work days between December 8 - the day she was re-hired - and the end of the pay period.

Further, the defendant submitted complete payroll records (Rec. Doc. 28-1 pp. 3-17) which are completely consistent with the payroll information contained in the documents submitted by the plaintiff and completely inconsistent with the plaintiff's testimony. Specifically, the payroll records indicate the plaintiff was paid for 40.4 hours on November 27 - consistent with the documents submitted by the plaintiff. Then there is a break and summary of her earnings history consistent with her resignation on November 28.

On December 11, 2015 she was paid for 17.8 hours of regular time, and on December 24 she was paid for 16.25 hours of regular time - again completely consistent with the documents submitted by the plaintiff and completely inconsistent with the plaintiff's testimony. Thus, the plaintiff's explanation is simply not credible.

When presented with evidence that a Dollar Tree employee can neither clock in to a store cash register nor receive a pay check without first digitally signing an arbitration agreement, the plaintiff had no explanation for how she was able to

circumvent that procedure, log in to the cash registers at work, and get paid for the hours that she put in.

Collectively, this Court finds the plaintiff's testimony to be lacking in credibility. On the other hand, this Court finds the testimony of Ms. McKee and Mr. Votta to be credible. Therefore, the plaintiff's contention that she did not digitally sign an arbitration agreement when she was hired at the Evangeline Thruway store on December 8, 2015 does not create a genuine issue of material fact. Considering all of the evidence presented, both in written submissions and in the testamonial evidence, this Court finds that the defendant proved that a valid and enforceable arbitration agreement was electronically signed by the plaintiff on December 8, 2015 and further finds that this fact was not genuinely disputed by the plaintiff. Accordingly, this Court concludes that there was a valid and enforceable arbitration agreement between the plaintiff and the defendant at all material times.

## D. THE PLAINTIFF'S CLAIMS FALL WITHIN THE SCOPE OF THE ARBITRATION AGREEMENT

Having found that there is a valid agreement to arbitrate existing between the parties, this Court also finds that the plaintiff's claims fall within the scope of the arbitration agreement. The plaintiff contends that she was discriminated against by her employer on the basis of her race when she was denied promotion and she also

contends that she was not paid properly. The arbitration agreement expressly states that it pertains to claims for overtime pay, off the clock work, wages or other compensation, and discrimination based on race. (Rec. Doc. 6-2 at 5). Accordingly, this Court finds that the plaintiff's claims fall within the scope of the arbitration agreement.

## CONCLUSION

For the foregoing reasons, this Court recommends that the defendant's motion to compel arbitration and dismiss this lawsuit (Rec. Doc. 6) be granted.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds

of plain error. See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Signed at Lafayette, Louisiana on this 14th day of December 2017.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE